UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **KIRK WAYNE MCBRIDE, SR.,** <br> **TDCJ No. 0733097,** <br><br> Petitioner, <br><br> v. <br><br> **BOBBY LUMPKIN, Director,** <br> **Texas Department of Criminal Justice,** <br> **Correctional Institutions Division,** <br><br> Respondent. | §§§§§§§§§§§§§ | CIVIL NO.  SA-18-CA-0831-DAE |

**MEMORANDUM OPINION AND ORDER ON REMAND**

In October 2019, this Court dismissed as successive Petitioner Kirk Wayne McBride, Sr.'s federal petition for a writ of habeas corpus challenging the constitutionality of state parole revocation proceedings that took place in July 2017 and November 2017.  (ECF No. 24).  On appeal, the Fifth Circuit vacated this Court's judgment and remanded for further consideration of Petitioner's federal habeas petition. *McBride v. Lumpkin*, No. 19-51160, 2022 WL 1800842 (5th Cir. June 2, 2022); (ECF No. 41).

Currently before the Court are Petitioner's amended federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 52), Respondent Bobby Lumpkin's amended answer (ECF No. 65), and Petitioner's reply (ECF No. 77) thereto.[1]  Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

---

[1] Also before the Court are Petitioner's numerous supplemental pleadings and advisories filed in support of his amended § 2254 petition.  (ECF Nos. 44, 46, 49, 50, 55, 61, 62, 79, 81, and 91).

## I. Background

A. **State Proceedings**

In September 1995, Petitioner was convicted of aggravated sexual assault and was sentenced to ninety-nine years of imprisonment. *State v. McBride*, No. CR95-129 (22nd Dist. Ct., Comal Cnty., Tex. Sept. 8, 1995) (ECF No. 14-7 at 2-5). Petitioner was incarcerated for this offense until November 5, 2014, when he was released from TDCJ custody to parole supervision. (ECF No. 15-1 at 3, 14). Petitioner remained on parole until February 15, 2017, when a pre-revocation warrant of arrest was issued due to a urinalysis test revealing the presence of amphetamines. (ECF No. 12-19 at 4). A parole revocation hearing was held March 2, 2017, at which the Board of Pardons and Paroles (BPP) decided to place Petitioner in an Intermediate Sanction Facility (ISF) for drug treatment rather than revoke his parole. *Id*. Petitioner was later released from the ISF to parole in June 2017. (ECF No. 15-1 at 3).

Four days after his release from the ISF, Petitioner failed another drug test, and another pre-revocation warrant was issued for his arrest. (ECF No. 15-1 at 3-4, 21-25). The BPP held a parole revocation hearing on July 28, 2017, concerning Petitioner's drug use and failure to participate in a substance abuse treatment program, and voted to revoke Petitioner's parole three days later. (ECF No. 15-1 at 3-5, 24-37). On November 8, 2017, the BPP reopened the proceedings for the limited purpose of allowing the parole officer to present a signed Notice of Special Condition. (ECF No. 15-1 at 54-62). On November 20, 2017, the BPP decided to continue Petitioner's parole revocation. *Id*. Petitioner acknowledged receipt of this decision on November 27, 2017. *Id*. at 56.

Petitioner filed three separate state habeas corpus applications challenging various aspects of all three parole revocation proceedings. In the first of these applications, Petitioner challenged the constitutionality of the March 2017 proceeding. (ECF Nos. 11-17, 11-17). The second challenged the July 2017 proceeding. (ECF Nos. 12-14 through 12-19). The Texas Court of Criminal Appeals denied both of these applications without written order on November 15, 2017. *Ex parte McBride*, Nos. 16,779-31, -32 (Tex. Crim. App.); (ECF Nos. 11-13, 12-10). Two weeks later, Petitioner executed another state habeas corpus application challenging the July 2017 proceeding as well as elements of the November 2017 supplemental proceeding. (ECF Nos. 14-2 through 14-5). The Texas Court of Criminal Appeals denied this application without written order on April 4, 2018. *Ex parte McBride*, No. 16,779-35 (Tex. Crim. App.); (ECF No. 13-19).[2]

**B.      Federal Proceedings**

In December 2017, Petitioner filed his first federal habeas corpus petition in this Court challenging only elements from the original March 2017 revocation hearing which resulted in his being placed in ISF. *See McBride v. Davis*, No. 5:17-cv-01262-FB (W.D. Tex.). The Court, the Honorable Judge Fred Biery presiding, dismissed the petition with prejudice in July 2018, finding: (1) the petition became moot when Petitioner was released from ISF to parole, (2) Petitioner's claims were unexhausted, and (3) the claims also lacked merit. *McBride*, No. 5:17-cv-01262-FB (ECF Nos. 23, 24). The Fifth Circuit agreed and denied Petitioner a certificate of appealability. *McBride v. Davis*, No. 18-50782, 2019 WL 11850808 (5th Cir. 2019).

---

[2]      Petitioner later filed four more state habeas corpus applications challenging his parole revocation proceedings. (ECF Nos. 67-10, 67-14, 67-20, and 67-28). Each of these applications was dismissed by the Texas Court of Criminal Appeals as an abuse of the writ. *Ex parte McBride*, Nos. 16,779-44, -46, -48, -50 (Tex. Crim. App.); (ECF Nos. 67-7, 67-13, 67-17, and 67-27).

3

Petitioner initiated the instant proceeding in August 2018 by filing his second petition for federal habeas corpus relief. (ECF No. 1). In the § 2254 petition, Petitioner challenged the constitutionality of the July 2017 parole revocation proceeding and the supplemental November 2017 revocation proceeding. This Court dismissed the petition without prejudice in October 2019 for lack of jurisdiction, finding the petition to be "successive" because Petitioner could have challenged the July 2017 and November 2017 revocation proceedings in his first federal habeas corpus petition. (ECF No. 24).

On appeal, the Fifth Circuit vacated this Court's determination that it lacked jurisdiction to consider the second petition. *McBride v. Lumpkin*, No. 19-51160, 2022 WL 1800842 (5th Cir. 2022); (ECF No. 41). The court found that Petitioner's first federal petition should not have been dismissed *with* prejudice, but rather dismissed *without* prejudice since the petition was found to be moot. *Id*. at *2. For this reason, the court determined that Petitioner's second petition was not impermissibly "second or successive" under 28 U.S.C. § 2244(b) and remanded the case back to this Court for further proceedings. *Id*.

Following the Fifth Circuit's remand, Petitioner filed an amended federal petition raising eleven grounds for relief, with an additional ground raised in one of Petitioner's supplemental pleadings. (ECF Nos. 46, 52). Respondent has filed an amended answer, to which Petitioner has replied. (ECF Nos. 65, 77). These proceedings are thus ripe for determination.

## II. Petitioner's Allegations

In his amended petition and supplemental briefing, Petitioner set forth the following grounds for relief regarding his July 2017 and November 2017 parole revocation proceedings:

1. The BPP violated his due process rights by breaching a contractual agreement when it revoked parole based on terms, rules, or conditions not set out in the Certificate of Release;

2. The BPP violated his due process rights by failing to provide sufficient evidence to support a finding that he violated a condition of his release;

3. The BPP violated his due process rights because the pre-revocation warrant and subsequent revocation were premised on a false, misleading, and unverified violation report;

4. The BPP violated his due process rights by revoking his parole without first holding a preliminary hearing;

5. The BPP violated his due process rights by failing to dispose of the charges within forty-one days as required under state law;

6. The BPP violated his due process rights by failing to provide a forum for the discovery and presentation of evidence;

7. The BPP violated his due process rights by revoking his parole based on a violation that was barred under the doctrine of collateral estoppel;

8. The BPP violated his due process rights by revoking his parole based on a mere "technical violation" and not providing written reasons for the revocation;

9. The BPP violated his due process rights by denying him the right to hire an attorney during the revocation process;

10. The BPP violated his due process rights by failing to provide a mitigation hearing prior to revoking his parole;

11. The BPP violated his due process rights by revoking his parole despite a lack of sufficient evidence that he violated a condition of his release; and

12. Petitioner's urine sample was taken without consent, a search warrant, or exigent circumstances in violation of his Fourth Amendment rights.

### III. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254.[3] Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrinton*, 562 U.S. at 102 (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *See Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable,

---

[3] In numerous pleadings to the Court, Petitioner argued that this case should be litigated under the general habeas statute codified in 28 U.S.C. § 2241 rather than more stringent § 2254. (ECF Nos. 1, 8, 17, 27, 50, 52, 55, 68, and 77). The Fifth Circuit has held the opposite. *See Hartfield v. Osborne*, 808 F.3d 1066, 1071 (5th Cir. 2015) (finding § 2254 governs any habeas writ filed by a person currently in custody pursuant to a state court judgment). However, the issue need not be resolved here. As demonstrated herein, the outcome of this proceeding is the same regardless of whether Petitioner's claims are considered de novo under § 2241 or under the deferential standard of § 2254.

6

which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV. Merits Analysis

### A. Due Process (Claims 1-11)

The majority of Petitioner's allegations contend he was denied due process rights during his July 2017 and November 2017 parole revocation hearings. Indeed, a parolee is constitutionally entitled to certain due process protections before a State may revoke his parole. *Morrissey v. Brewer*, 408 U.S. 471, 487-488 (1972). But a parole revocation hearing is not a criminal prosecution, and "the full panoply of rights due a defendant in such a proceeding does not apply[.]" *Id*. at 480.

Nevertheless, the Due Process Clause requires certain "minimal safeguards" to protect the limited liberty interest at stake in a parole revocation hearing. Those safeguards include the right to: (1) written notice of the alleged parole violations; (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) cross-examine and confront witnesses unless there is good cause to disallow confrontation; (5)

a neutral decision maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *Id*. at 480, 489; *see also Meza v. Livingston*, 607 F.3d 392, 404 (5th Cir. 2010). The goal of this "narrow inquiry" is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id*. at 484.

Applying these requirements, the record amply demonstrates that Petitioner's due process rights were not violated. Petitioner received notice of his alleged parole violations on July 14, 2017, two weeks before his parole revocation proceeding. (ECF No. 15-1 at 4, 8-11, 18-19, 38-41). These violations include three allegations that Petitioner failed to abstain from using drugs and one allegation that he failed to participate in a substance abuse treatment program. *Id*. At the same time, Petitioner acknowledged notice of his rights as an offender in the revocation process. *Id*. at 8, 38. While Petitioner was given the opportunity to request a preliminary hearing, he did not do so. *Id*. at 11, 41. Instead, he requested a revocation hearing and acknowledged the date set for the hearing. *Id*.

A revocation hearing was held on July 28, 2017. *Id*. at 5, 25-37. The evidence against Petitioner was presented at the hearing, including the testimony of Petitioner's parole officer and five exhibits, two of which were lab results of urinalysis tests dated July 3, 2017, and July 12, 2017. *Id*. at 31-36. Petitioner testified on his own behalf at the hearing, admitting to one of the violations, but did not submit any exhibits. *Id*. He also made objections to the admission of the lab reports which were ultimately overruled. *Id*. Petitioner did not challenge the neutrality of the hearing officer. *Id*. at 31.

Following the hearing, both the parole officer and the hearing officer recommended the revocation of Petitioner's parole. *Id*. at 37. A few days later, on July 31, 2017, the BPP voted to revoke Petitioner's parole. *Id*. at 24, 48-51. Petitioner acknowledged receiving a copy of the BPP's decision on August 2, 2017. *Id*. at 48-51. On November 8, 2017, the BPP reopened the July 2017 proceeding at Petitioner's request for the limited purpose of allowing the parole officer to present a signed "Notice of Special Condition," to which Petitioner objected. *Id*. at 55-62. After hearing from the parole officer and Petitioner, the hearing officer reaffirmed the decision to revoke Petitioner's parole. *Id*. The BPP then voted to continue Petitioner's parole revocation on November 20, 2017. *Id*. at 55. Petitioner received notice of this decision on November 27, 2017. *Id*. at 56.

In sum, Petitioner received written notice of the alleged parole violations and a disclosure of the evidence against him; he had an opportunity to be heard in person, to present witnesses and documentary evidence, and to cross-examine and confront witnesses; his hearings were before a neutral decision maker; and he received a written statement as to the evidence relied upon and the reasons for revoking parole. As such, his revocation proceedings appear to have satisfied all of *Morrissey*'s requirements. 408 US at 480.

Be that as it may, Petitioner raises numerous allegations concerning the constitutionality of both the July 2017 and November 2017 revocation proceedings. Out of an abundance of caution, the Court will address each of these allegations below.

1.   <u>Breach of Contract</u> (Claim 1)

In his first allegation, Petitioner contends the BPP committed a "breach of contract" by revoking his parole based on the violation of a condition that was not agreed upon at the time of his release. (ECF No. 52 at 16-21). Petitioner's parole was revoked as a result of four violations—three allegations of failing to abstain from drug use and one allegation of failing to participate in a substance abuse treatment program. Petitioner contends that these restrictions—violations of "Rule 8 S"—were not set forth in his original Certificate of Parole. *Id*. at 19. However, the certificate states that Petitioner "shall commit no offense against the laws of this State or any other State or of the United States." (ECF No. 15-1 at 44). It also instructs Petitioner to submit to a substance program. *Id*. at 42. The record thus contradicts Petitioner's assertion.

2.   <u>Insufficient Evidence</u> (Claims 2, 3, and 11)

Petitioner next contends the evidence was insufficient to support a finding that he violated one or more conditions of his release. (ECF No. 52 at 21-28, 49-50). He also argues that the revocation was based solely upon a violation report which was false, misleading, and unverified. *Id*. at 28-29. However, judicial review of a decision to revoke parole "is quite circumscribed." *Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993). Due process only requires that there be "some evidence" in the record to support the decision to revoke parole. *Id*.

Here, Petitioner admitted to the first alleged violation—using illegal drugs, narcotics, or controlled substances in the form of amphetamines. (ECF No. 15-1 at 25, 34). He also admitted to arriving ten minutes late to his substance abuse class and was therefore prohibited from attending. *Id*. at 35. In addition, the State presented two urinalysis lab reports showing that Petitioner tested positive for amphetamines and cocaine on separate occasions. *Id*. Thus, there

clearly was "some evidence" to support the BPP's decision to revoke his parole. This is particularly true given that a single violation of a condition of community supervision is sufficient to warrant revocation in Texas. *See Blackmon v. Thaler*, 425 F. App'x 375, 376 (5th Cir. 2011) (unpublished) ("[A] habeas court need not consider a constitutional challenge to a conviction or violation used to revoke a prisoner's parole when other valid violations of parole were found.") (citation omitted). As a result, Petitioner's allegations hold no water.

   3.   No Preliminary Hearing (Claim 4)

Next, Petitioner contends the BPP denied him due process by not first providing a preliminary hearing before revoking his parole. (ECF No. 52 at 29-32). In *Morrissey*, the Supreme Court held that due process entitles a parolee to a preliminary hearing to determine "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 US at 485. Petitioner argues that the denial of a preliminary hearing necessarily invalidates his subsequent revocation.

The record shows that Petitioner was informed of his right to request a preliminary hearing but did not do so. (ECF No. 15-1 at 5, 8, 11). Petitioner cannot create his own constitutional error simply by refusing to accept the due process protections offered him by the State. This is particularly true given that a revocation hearing was ultimately held, allowing Petitioner to present evidence and confront witnesses against him. At that point, "the denial of [Petitioner's] preliminary hearing right no longer has any relation to his incarceration," and "[t]o order [his] release from custody at this time would be to grant an extreme remedy for a deprivation from which [he] is no longer suffering." See *Collins v Turner*, 599 F2d 657, 658 (5th Cir 1979) (finding provision of a final revocation hearing effectively remedied any constitutional defect from failing

11

to conduct a preliminary hearing). In other words, the BPP's failure to provide Petitioner with a preliminary hearing bears no relation to his present incarceration, which is the result of the revocation hearing that took place two weeks after Petitioner was notified of his alleged violations. As a result, any error in failing to hold a preliminary hearing was harmless. *See Williams v. Quarterman,* 307 F. App'x 790, 793-94 (5th Cir. 2009) (unpublished) (utilizing harmless error analysis when reviewing challenge to parole revocation proceeding) (citing *Fry v. Pliler,* 551 U.S. 112, 121 (2007)).

    4.    <u>Timeliness</u> (Claim 5)

In his fifth ground for relief, Petitioner argues the BPP failed to dispose of the charges against him within the time period set forth by state law. (ECF No. 52 at 33-36). Citing Tex. Gov't Code §§ 508.281 and 508.282, Petitioner contends the BPP had 41 days from September 15, 2017—the day his motion to reopen was granted—to dispose of the case. *Id*. Because the BPP did not dispose of the case until November 20, 2017, Petitioner asserts that his due process right to a hearing within a "reasonable time" was violated.

Petitioner alleges a violation of state law which does not, without more, present an issue of constitutional magnitude. Federal habeas corpus relief is available only for the vindication of rights existing under federal law, not rights existing solely under rules of state procedure or alleged violations of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.") (citations omitted); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable). Contrary to his assertions, Petitioner does not have a constitutional right to a revocation hearing within 41 days. *Moody v. Daggett,* 429 U.S. 78 (1976) (finding no right to a

speedy revocation hearing); *Morrissey,* 408 U.S. at 488 (finding a lapse of two months "would not appear to be unreasonable."). Thus, even if the state court misapplied state law as Petitioner now suggests, it would have no impact on this proceeding. Relief is therefore denied.

5. <u>Lack of Forum</u> (Claim 6)

Petitioner next contends that he was (1) not provided with evidence against him, and (2) denied the right to present witnesses at the November 2017 revocation hearing. (ECF No. 52 at 36-39). According to Petitioner, he was informed that he could see the evidence against him—the signed Notice of Special Condition—before the hearing, but this did not occur. *Id*. He also states that he was denied the right to present three witnesses, all of whom worked for the BPP, at the hearing. *Id*.

There is nothing in the record to support Petitioner's contentions that he was promised evidence before the hearing or was denied witnesses he had requested. Nor did Petitioner object to these alleged denials at the November 8, 2017, revocation hearing. (ECF No. 15-1 at 58-59) (showing Petitioner only objected to the State's Exhibits A-D). "Absent evidence in the record," a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)). Petitioner's allegations could therefore be denied solely because they are conclusory. *Ross*, 694 F.2d at 1011 (finding that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

Regardless, the November 2017 revocation proceeding was convened solely for the limited purpose of allowing Petitioner's parole officer to supplement the record with a signed Notice of

13

Special Condition. (ECF No. 15-1 at 59). All of the information and testimony presented at the July 2017 proceeding were considered at the November 2017 proceeding. *Id*. As discussed previously, Petitioner admitted to using amphetamines while on parole at the July 2017 hearing. *Id*. at 25, 34. He also admitted to being barred from his substance abuse class for being late. *Id*. at 35. Thus, even if Petitioner was denied a pre-hearing look at the evidence or the ability to present certain witnesses at the November 2017 hearing, the error would be harmless because he had already admitted to two of the four alleged violations at the previous hearing. *See Blackmon*, 425 F. App'x at 376 ("[A] habeas court need not consider a constitutional challenge to a conviction or violation used to revoke a prisoner's parole when other valid violations of parole were found.").

      6.    <u>Collateral Estoppel</u> (Claim 7)

Petitioner's next allegation is difficult to understand. While acknowledging that double jeopardy principles do not apply in the parole revocation context, Petitioner appears to argue that his parole revocation violated the doctrine of collateral estoppel because the proceeding was an administrative function, not a criminal proceeding. (ECF No. 52 at 39-42). Petitioner contends that the BPP's grant of his motion to reopen in September 2017 somehow resolved in his favor the issue of whether he violated "Rule 8 S," thus precluding, via collateral estoppel principles, the BPP from determining the issue at the November 2017 hearing.

Despite Petitioner's novel argument, the Fifth Circuit has long rejected "attempts to erect a due process basis, independent of the double jeopardy clause, for the application of collateral estoppel." *Parr v. Quarterman*, 472 F.3d 245, 254-55 (5th Cir. 2006); *Gill v. State of Texas*, 25 F.3d 1044, 1044 (5th Cir. 1994) (unpublished) ("The doctrine of collateral estoppel does not have constitutional dimensions independent of the double jeopardy clause"); *Showery v. Samaniego,*

814 F.2d 200, 204 (5th Cir. 1987) (same). Because Fifth Circuit precedent clearly dictates that the doctrine of collateral estoppel does not apply to parole proceedings, Petitioner's claim must fail.

7. <u>No Written Reasons</u> (Claim 8)

Next, Petitioner asserts that the BPP failed to provide him with written reasons for revoking his parole. (ECF No. 52 at 42-45). Petitioner correctly notes that the minimum requirements of due process in a parole revocation proceeding include "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey,* 408 U.S. at 488. However, the record confirms that Petitioner received a copy of the written reasons for his revocation on August 2, 2017, and again on November 27, 2017. (ECF No. 15-1 at 51-53). While Petitioner may have desired a more thorough explanation, the written report he was provided satisfies the requirements of due process.

Furthermore, even if Petitioner did not receive a copy of the report as alleged in his writ, he admitted to two of the alleged violations—using amphetamines while on parole and being barred from his substance abuse class for being late. *Id*. at 25, 34-35. Thus, any error in this regard was harmless.

8. <u>Denial of Counsel</u> (Claim 9)

In his ninth claim for relief, Petitioner argues he was denied the right to hire an attorney prior to the July 2017 and November 2017 revocation hearings. (ECF No. 52 at 45-46). He does not challenge the BPP's failure to appoint him counsel—rather, Petitioner contends that he requested the opportunity to *hire* an attorney at the July 2017 hearing but was ignored by the

hearing officer. *Id*. He also alleges that he was similarly denied the right to hire an attorney at the November 2017 hearing because the hearing was "limited." *Id*.

A parolee has no absolute right to counsel, appointed or hired, during a parole revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *United States v Carrillo*, 660 F3d 914, 925 (5th Cir 2011). Instead, the need for counsel at parole revocation hearings must be made on a case-by-case basis. *Scarpelli*, 411 U.S. at 790 (explaining that the decision to appoint counsel "is left to the sound discretion of the state authority charged with the responsibility of administering the parole system"). According to the Supreme Court,

> [C]ounsel should be provided in cases where, after being informed of his right to request counsel, the . . . parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id*. When making this determination, courts also should consider whether the parolee is capable of "speaking effectively for himself." *Id*. at 790-91.

Here, the record indicates that Petitioner was not appointed counsel because the allegations were not complex, Petitioner admitted to at least one of the allegations, and he understood the proceeding and could speak for himself. (ECF No. 15-1 at 31). While Petitioner asserts that he also requested, and was denied, the right to hire an attorney, there is no evidence in the record to support this assertion. Even assuming the truth of the assertion, the BPP was well within its discretion to deny Petitioner counsel for the same reasons it did not appoint one. *See Scarpelli*, 411 U.S. at 790 (finding "the presence and participation of counsel will probably be both

16

undesirable and constitutionally unnecessary in most revocation hearings[.]"). Because Petitioner was not deprived of a constitutional right, habeas relief is not warranted.

9.  No Mitigation Hearing (Claim 10)

Lastly, Petitioner asserts that the BPP failed to provide him with a mitigation hearing prior to deciding whether to revoke his parole. (ECF No. 52 at 46-49). The record does not support Petitioner's assertion. Under Fifth Circuit precedent, even a parolee (like Petitioner) who admitted certain allegations against him "must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Williams v. Johnson*, 171 F.3d 300, 305 (5th Cir. 1999). Petitioner was given just such an opportunity at both the July 2017 hearing and the November 2017 hearing. (ECF No. 15-1 at 36, 61) (summarizing Petitioner's testimony that he had been doing well while on parole, had a job, was not a danger to others, and was eager to move on with his life). Petitioner's allegation is meritless.

10. Summary

Petitioner raised each of the above allegations in state court during his state habeas corpus proceedings. The state court concluded that Petitioner lacked credibility and failed to establish an entitlement to relief. The record before this Court confirms this conclusion and demonstrates that Petitioner was afforded the due process owed to him under *Morrissey* during his July 2017 and November 2017 parole revocation proceedings. Federal habeas relief is therefore unavailable. *Richter*, 562 U.S. at 101.

**B.    The Fourth Amendment (Claim 12)**

In his final allegation, Petitioner contends his parole was revoked as a result of an illegal search and seizure in violation of his Fourth Amendment rights. (ECF No. 46). Specifically,

17

Petitioner contends his urine sample—which later tested positive for amphetamines—was taken by his parole officer without consent, a search warrant, or exigent circumstances. Even assuming the urine sample was taken unlawfully, Petitioner provides no legal support for his contention that a parole revocation cannot be based on an unlawful search and seizure. Indeed, the Supreme Court has found that the exclusionary rule, which generally prohibits the introduction of evidence obtained in violation of a defendant's Fourth Amendment rights at a criminal trial, does not apply to parole revocation hearings. *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) (finding the exclusionary rule "incompatible with the traditionally flexible, administrative procedures of parole revocation."). Thus, Petitioner's final allegation affords him no basis for federal habeas corpus relief.

## V. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further. *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not be issued.

### VI. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in petitioner's state court proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant relief.[4]

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Kirk Wayne McBride, Sr.'s Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 52) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

---

[4] As discussed previously, even if the AEDPA's deferential standard did not apply as Petitioner suggests, the Court finds that relief would still be denied on the merits of the claims under a *de novo* standard of review.

**SIGNED** this the 21st day of March, 2024.

_____
**DAVID A. EZRA**
**SENIOR U.S. DISTRICT JUDGE**